UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE VELASQUEZ CORTES, | Case No. 25-cv-03460-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS), et al., | Docket No. 17 |
| Defendants. | |

This is a mandamus action brought by Plaintiff Rene Velasquez Cortes, proceeding pro se. Mr. Velasquez Cortes seeks to compel the U.S. Citizenship and Immigrations Services Office to schedule his asylum interview.  His application for asylum has been pending since December 30, 2021.

The Government moves for summary judgment, contending that under the standard set forth by the Ninth Circuit, the four-and-a-half delay in scheduling Plaintiff's asylum interview is not unreasonable.  For the reasons stated below, the Court **GRANTS** the Government's motion for summary judgment.

## I.    BACKGROUND

### A. The Parties

Mr. Velasquez Cortes is a citizen of Columbia who currently resides in San Jose, California. Dkt. No. 1 ¶ 5.  He filed an asylum application for himself and his family on December 30, 2021. *Id.*  He has followed up with the UCIS multiple times since submitting his application, but no asylum interview has been scheduled yet. *Id.* ¶ 12.  Because his asylum hearing has been delayed, he has been unable to travel to other countries to meet with clients and

to see family. *Id.* 13-15. He was unable to leave the United States to see his sister before she succumbed to a chronic illness. *Id.* ¶ 15. His mother is currently seriously ill, but he is unable to visit her. *Id.* Mr. Velasquez Cortes has not applied for advance parole.

**B. The Asylum Process**

Section 1158(d)(5) states that absent "exceptional circumstances," an initial interview or hearing on an asylum application should commence within 45 days after filing, and adjudication should be complete within 180 days. 8 U.S.C. § 1158(d)(5)(A)(ii), (iii). Section 1158(d)(7), titled "No private right of action," provides that "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7).

Asylum applicants may remain in the United States during the pendency of their applications. Dkt. No. 17-1, Lassen Decl. ¶ 7. If they need to travel outside the United States, they may apply for "advance parole." 8 C.F.R. § 212.5(f); Dkt. No. 17-2, Lehman Decl. ¶ 21. They may also apply for employment authorization document so they may lawfully work in the United States while awaiting a decision on their asylum application. Lehman Decl. ¶ 18.

In 1995, the Asylum Division implemented a "last-in first out" (LIFO) scheduling method for asylum applications. Lassen Decl. ¶ 12. Under this method, the Division scheduled recently filed cases ahead of older cases. *Id.* The idea was to disincentive fraudulent filings made to obtain employment authorization. *Id.* This method reduced the asylum backlog from 464,100 cases in 1995 to 4,200 pending longer than six months in 2013. *Id.*

Around 2013, crossings at the U.S.-Mexico border significantly increased. *Id.* ¶ 14. The increased number of credible fear interviews caused the Asylum Division to struggle to adjudicate other asylum applications. *Id.* ¶ 20. The Division switched temporarily to a first-in first-out system, scheduling interviews in the order applications were filed. *Id.* ¶ 21. Under this system, the backlog of asylum applicants increased. *Id.* ¶ 22.

In 2018, UCIS returned to the LIFO system, with applications prioritized as follows: (1) applications that were scheduled for an interview, but the interview had to be rescheduled at the applicant's request or the needs of USCIS; (2) applications pending twenty-one (21) days or less

since filing; and (3) all other pending applications, starting with newer filings and working back toward older filings. *Id.* ¶ 25.

Currently, USCIS adjudicates asylum applications on two tracks: on the first track, applications are generally scheduled according to the LIFO system in the order of priority described above. *Id.* ¶ 32. On the second track, asylum officers review backlogged petitions, starting with the oldest applications and working forward. *Id.*

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also* Fed. R. Civ. Proc. 56(c)(1)(A). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255.

## III.   <u>DISCUSSION</u>

### A. Jurisdiction for APA Claim

As an initial matter, the Government contends that the Court lacks jurisdiction over Plaintiff's APA claims.

The APA provides that a "reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphases omitted). Courts in this

circuit have held that under *Norton*, "the adjudication of asylum claims within a reasonable amount of time qualifies as a discrete action that USCIS is required to take." *Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 957 (C.D. Cal. 2023); *c.f. Liu v. Chertoff,* 2007 U.S. Dist. LEXIS 56021, at *3 (N.D. Cal. July 23, 2007) ("To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law."). The Court finds it has jurisdiction to consider Plaintiff's APA claim.

### B. Mandamus Jurisdiction

The Government also challenges the Court's mandamus jurisdiction. "Because mandamus relief and relief under the APA are 'in essence' the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA," courts may elect to analyze just the APA claim. *R.T. Vanderbilt Co.*, 113 F.3d at 1065 (quoting *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997)). Here, Plaintiff's claim under the APA and the Mandamus Act are identical. The Court therefore analyzes Plaintiff's claim under the APA only.

### C. TRAC Factors

The APA mandates that administrative agencies adjudicate matters "within a reasonable time." 5 U.S.C. § 555(b). A court may "compel agency action . . . unreasonably delayed" where the agency (1) has a "clear, certain, and mandatory duty" and (2) "has unreasonably delayed in performing such duty." *Vaz v. Neal*, 33 F.4th 1131, 1135-36 (9th Cir. 2022) (citing 5 U.S.C. § 706(1)). Courts in the Ninth Circuit apply the "TRAC factors," a six-factor test first announced in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70, 80, 242 U.S. App. D.C. 222 (D.C. Cir. 1984), to determine whether an agency's delay in adjudicating an application is unreasonable under the APA. *See Indep. Mining Co.*, 105 F.3d at 507.

The TRAC factors test are as follows:

(1) whether the time the agency takes to make its decisions is governed by a rule of reason;

(2) whether Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, such that the statutory

scheme may supply content for this rule of reason;

(3) whether the delays that might be reasonable in the sphere of economic regulation are less tolerable because human health and welfare are at stake;

(4) the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the nature and extent of the interests prejudiced by the delay; and

(6) whether the agency action is unreasonably delayed notwithstanding any lack of impropriety lurking behind agency lassitude.

*TRAC*, 750 F.2d at 80.

1. Rule of Reason

Although no single factor is determinative, the first factor is the "most important." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). This factor "requires courts to consider both the length of the delay and the reasons for the delay." *Shahijani v. Laitinen*, 2023 U.S. Dist. LEXIS 189142, at *9 (C.D. Cal. Oct. 6, 2023).

"There is a rule of reason when there is an identifiable rationale for the agency's actions." *Baizakova v. Jaddou*, 2024 U.S. Dist. LEXIS 106414 at *15 (C.D. Cal. June 14, 2024) (citing *Ray v. Cuccinelli*, 2020 U.S. Dist. LEXIS 205342, 2020 WL 6462398, at *9 (N.D. Cal. Nov. 3, 2020)). Courts in this circuit have consistently found that the LIFO system is a rule of reason. *See Teymouri v. U.S. Citizenship & Immigr. Servs.*, 2023 U.S. Dist. LEXIS 17280, 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022) (recognizing that "courts consistently find that the last-in-first-out scheduling system . . . is a rule of reason") (collecting cases); *Kyaw v. Jaddou*, No. 24-cv-6326-VC, 2025 WL 1310748, at *1 (N.D. Cal. May 6, 2025) (holding that the two-track system "reflects a rule of reason that both prioritizes weeding out frivolous filings and managing the backlog"). The LIFO system has an identifiable rationale: disincentivizing individuals from applying for asylum in order to obtain work authorization. The Government has also submitted undisputed facts of LIFO's historic efficacy in reducing application backlog. The Court agrees that LIFO is a rule of reason.

5

The first factor also mandates consideration of the length of the delay. Courts in this circuit have found the length of delay unreasonable when it nears or exceeds six years and the Government cannot provide an indication of when the petition will be adjudicated. *See Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1072-73 (N.D. Cal. 2014) (a five-year-and-ten-month delay was unreasonable where defendants were "unwilling[] to indicate if or when [petitioner's] petition will be adjudicated"); *Asiryan v. Radel*, 2026 U.S. Dist. LEXIS 129608, at *11 (C.D. Cal. June 9, 2026) (over six year delay unreasonable where "Defendants make no representation regarding the timeframe at which Plaintiff's application will be adjudicated, if ever"); *Jamal v. Johnson*, 2016 U.S. Dist. LEXIS 107799, 2016 WL 4374773, at *6 (C.D. Cal. Aug. 15, 2016) (a seven-year-and-one-month delay was unreasonable where "the government has not indicated when, or even if, it will eventually adjudicate [plaintiff's] petition"); *Beyene v. Napolitano*, 2012 U.S. Dist. LEXIS 97751, 2012 WL 2911838, at *6 (N.D. Cal. July 13, 2012) (delays approaching ten years are generally unreasonable, but that shorter delays in accordance with rule of reason are reasonable).

Courts have consistently found delays under the six-year mark not unreasonable. *See Esquivel v. Lehman*, 2024 WL 2242441, at *1 (N.D. Cal. Apr. 16, 2024) (asylum application pending over four years held not to be unreasonable); *Pichkurova v. L.A. Asylum Office,* 2025 U.S. Dist. LEXIS 265520, at *4, 12 (C.D. Cal. Dec. 23, 2025) (a five-and-a-half-year delay was not unreasonable); *Teymouri v. United States Citizenship & Immigr. Servs.,* 2023 U.S. Dist. LEXIS 17280, at *9 (C.D. Cal. Jan. 31, 2023) ("[W]hile Plaintiff's application has been pending for over five years, courts have found similar delays to be reasonable"); *Zheng v. Mayorkas*, 2024 WL 130157, at *6 (N.D. Cal. Jan. 11, 2024) (explaining that "courts have ... found that even delays of over five years are reasonable"); *c.f. Naghibolashrafi v. Pompeo*, No. 19-cv-6602-NC, 2020 WL 1288409 at *4 (N.D. Cal. Mar. 18, 2020) ("[C]ase law in the immigration context uniformly suggest that delays less than four to six years are not unreasonable.").

Here, Plaintiff's application has been pending for approximately four and a half years, and the Government has not indicated when his asylum interview will be scheduled. This is a considerable length of time but has not yet crossed into the upper bound of reasonableness, at least under the current state of case law. On these facts, Factor 1 favors the Government — for the

moment. With each month that passes, the delay approaches the tipping point.

### 2. Factor 2: Congressional Timetable

The second TRAC factor "considers whether Congress has provided an indication of the speed with which it expects an agency to act." *Reyes Briseda v. Lehman*, 2024 U.S. Dist. LEXIS 84159, 2024 WL 2112864, at *5 (N.D. Cal. May 8, 2024). 8 U.S.C. § 1158(d)(5)(A) provides such a Congressional indication: "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii). However, this timetable does not "create any substantive or procedural right or benefit that is legally enforceable by any party against the United States." *Id.* § 1158(d)(7). Based on the plain text of the statute, courts have recognized that these timing requirements are not mandatory and "do[] not outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays." *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1178 (N.D. Cal. 2023).

However, to the extent the Government relies on the "exceptional circumstances" exception to the timing requirement, courts in this circuit have recognized that the "exceptional circumstances" the Government invokes have existed since at least 2013. It is difficult to understand how conditions that have persisted for almost fifteen years can be labelled "exceptional." At some point, the exception becomes the rule, and courts are increasingly asking whether this point has been reached. *See Kullab v. United States Dep't of Homeland Sec.*, 2025 U.S. Dist. LEXIS 55631, 2025 WL 901943, at *7 (N.D. Cal. Mar. 25, 2025); *Asiryan v. Radel*, 2026 U.S. Dist. LEXIS 129608, at *13 (C.D. Cal. June 9, 2026). The Court joins these district courts in finding that given the persistence of the asylum backlog, such that it is difficult to describe it as "exceptional," this factor weighs in neither party's favor, at least at this juncture.

### 3. Factors 3 and 5: Health, Welfare, and Prejudice

The third and fifth factors present "overlapping" considerations, *Indep. Mining Co., 105 F.3d at 509*, focused on "whether human health and welfare are at stake and the nature and extent

of the interests prejudiced by delay," *Fang Yan v. Dir. of L.A. Asylum Off. for the U.S. Citizenship & Immigr. Servs.*, 2023 U.S. Dist. LEXIS 105115, 2023 WL 4053410, at *5 (C.D. Cal. June 16, 2023). Courts recognize the "toll that the asylum process can take on an applicant's mental and emotional wellbeing." *Varzaghani v. Mayorkas*, No. CV 23-1876-DMG (KESX), 2024 WL 2952141, at *5 (C.D. Cal. June 5, 2024). They also recognize that this is "an experienced shared with other asylum applicants in a similar position." *Martirosyan v. Jaddou*, 2025 U.S. Dist. LEXIS 72747, at *14 (C.D. Cal. Apr. 16, 2025). Further, when an individual may work and live in the U.S. while the application is pending, courts have found that prejudice under the third and fifth factors is "significantly reduced." *Kulakov v. USCIS*, No. 24-cv-1337, 2024 WL 4804098, at *6 (E.D. Cal. Nov. 15, 2024); *Su*, 2023 WL 7209630, at *6 (holding that third and fifth TRAC factors favored defendants where plaintiff had "work authorization and the ability to obtain other benefits, and may remain in the United States" pending the adjudication of his asylum application).

Here, as prejudice from the delay, Plaintiff points to his inability to see his sister before his death, and his inability to visit his mother, who is 87 and chronically ill. He also states that he has been unable to travel to meet with clients outside of the United States or pursue professional opportunities. However, he does not identify any specific professional opportunities he has lost. Plaintiff currently has a valid employment authorization document and is not subject to removal while his asylum application is pending.

Plaintiff's inability to visit his ill family is a concrete and specific harm from his pending asylum application. However, as the Government points out, Plaintiff may request advance parole, which would allow him to travel abroad and return to the United States. Plaintiff has made no such request and has made no argument that obtaining advance parole would be impossible or illusory. Plaintiff argues that the opportunity to obtain advance parole is "irrelevant," but given advance parole would alleviate his stated harms, the Court cannot ignore his failure to attempt to obtain it. The Court finds that these factors weigh in neither party's favor.

4. Factor 4: Effect of Expediting Delayed Action

The fourth factor considers "the effect of expediting delayed action on activities of a higher or competing priority." *Yan*, 2023 U.S. Dist. LEXIS 105115, 2023 WL 4053410, at \*5. Even when all other factors favor the plaintiff, courts have previously denied relief under the fourth TRAC factor where "a judicial order putting [the plaintiff] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F. 3d 1094, 1100 (D.C. Cir. 2003). District courts in the Ninth Circuit have found that this factor "strongly favors" the Government given its competing priorities, "such as adjudicating the petitions that were filed before [plaintiff's] and those that require expedited review due to exigent circumstances." *Yan*, 2023 WL 4053410, at \*5; *see also Varol v. Radel,* 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019); *Teymouri*, 2023 U.S. Dist. LEXIS 17280, 2022 WL 18717560, at \*5; *Reyes Briseda*, 2024 U.S. Dist. LEXIS 84159, 2024 WL 2112864, at \*7; *Denisov v. Mayorkas,* No. 23-cv-06442-SI, 2024 U.S. Dist. LEXIS 130207, at \*18 (N.D. Cal. July 23, 2024).

The premise of this factor is that agency adjudication is a zero-sum game. Scheduling Plaintiff's interview means not scheduling another applicant's interview. Plaintiff does not show that there would be any gain to expediting his application over others, some of which have been pending for longer, simply because he has brought an action in federal court. Accordingly, this factor favors the Government.

5. Factor 6: Impropriety

The final TRAC factor considers "whether there was any impropriety by the agency." *Reyes Briseda*, 2024 U.S. Dist. LEXIS 84159, 2024 WL 2112864, at \*7. Plaintiff does not claim any such impropriety, so this factor does not apply, and the Court will not consider it as weighing in either party's favor.

\*\*\*

Of the TRAC factors, two favor the Government, three are neutral, and one does not apply. Accordingly, the TRAC factors weigh in favor of the Government.  The Government's motion for summary judgment is **GRANTED**.   Plaintiff's mandamus action is dismissed without prejudice to a subsequent petition based on further delay.

**IT IS SO ORDERED**.

Dated: 7/13/2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

10